UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL TALAMANTEZ,

Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

Defendants.

Case No. 2:25-cv-92

Honorable Maarten Vermaat

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendant Meehan. The Court will dismiss Plaintiff's claims against the misjoined Defendant without prejudice.

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, King, and Cousins. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment sexual assault claims, First Amendment retaliation claims premised upon the actions of non-parties, claims premised upon MDOC rules and policies, and PREA claims.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff's Eighth Amendment claims against Defendants Wakefield and Thomas for excessive force, and First Amendment retaliation claim against Defendant Thomas for his threat to send Plaintiff to segregation remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility and the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington; LRF staff Warden Chris King, Sergeants Unknown Wakefield and Unknown Cousins, and Corrections Officer Unknown Thomas; and URF Corrections Officer Unknown Meehan.

Plaintiff alleges that, as part of his cancer treatment, Plaintiff had surgery known as an ileostomy to remove portions of Plaintiff's anus, colon, and intestine and create a stoma, or a hole in Plaintiff's side to remove waste. (*Id.*, PageID.6.) Plaintiff now uses an ostomy bag, which attaches to Plaintiff's stoma, to collect waste. (*Id.*)

On February 1, 2023, while at LRF, Defendant Wakefield asked to see Plaintiff's ostomy supplies. (*Id.*, PageID.6.) Plaintiff gave Defendant Wakefield his supplies, but told Defendant Wakefield not to touch them without gloves because Plaintiff did not want an infection from germs. (*Id.*) Defendant Wakefield became angry and indicated that he would perform a pat down of Plaintiff. (*Id.*) Plaintiff told Defendant Wakefield to be careful of Plaintiff's ostomy bag on his right side; however, when Defendant Wakefield performed the pat down, Defendant Wakefield's finger went into Plaintiff's "stoma hole," causing it to tear from Plaintiff's stomach. (*Id.*)

On February 8, 2023, Plaintiff was interviewed by a non-party nurse regarding the "Wakefield incident." (*Id.*, PageID.7.) Plaintiff alleges that the nurse did not "evaluate[] the issue." (*Id.*) Plaintiff requested medical treatment and complained of bleeding, swelling, and pain for two weeks before he was called out for treatment on February 27, 2023. (*Id.*)

On June 21, 2023, also at LRF, Sergeant Cousins was performing a pat down of Plaintiff when she put her thumb in Plaintiff's stoma hole, causing the existing tear to become larger. (*Id.*, PageID.8.) She told Plaintiff that she was sorry and that she forgot about Plaintiff's "disability." (*Id.*)

On October 30, 2023, Defendant Thomas came to Plaintiff's cell to search for a stolen television. (*Id.*) Before Defendant Thomas began his pat down of Plaintiff, Plaintiff told Defendant Thomas to watch out for Plaintiff's ostomy on Plaintiff's right side. (*Id.*, PageID.9.) Nonetheless, when Defendant Thomas performed his search, Defendant Thomas used force to pull and unsnap Plaintiff's ostomy bag, causing stool to drip onto Plaintiff's clothing and further tearing Plaintiff's stoma. (*Id.*) When Plaintiff complained, Defendant Thomas told Plaintiff to "shut up" or he would send Plaintiff to segregation. (*Id.*)

Plaintiff claims that each of the foregoing incidents caused Plaintiff to experience pain, including tearing, burning, and stinging. (*Id.*, PageID.10.) He alleges that Defendants Washington and King failed to conduct investigations into the actions of Defendants Wakefield, Cousins, and Thomas.

Plaintiff alleges that non-party Ms. Hoover examined Plaintiff's "tear and rip numerous times of all incidents" and helped Plaintiff with appointments. (*Id.*, PageID.7.) Plaintiff also credits a non-party G.I specialist for evaluating Plaintiff's tear of his stoma, providing treatment, and

recommending surgery. (*Id.*) Plaintiff claims that, the day after the G.I. specialist called "the prison" to complain "about the acts of wrong," Plaintiff was transferred. (*Id.*)

Following Plaintiff's transfer to URF, on September 3, 2024, Defendant Meehan conducted a pat down of Plaintiff. (*Id.*, PageID.11.) Plaintiff's cellmate informed Defendant Meehan of Plaintiff's "ostomy disability;" however Defendant Meehan did not show caution and pulled on the ostomy and the stoma, causing pain. (*Id.*) Defendant Meehan also squeezed Plaintiff's left buttock. (*Id.*) On "numerous" occasions when Plaintiff needed something, Defendant Meehan would tell Plaintiff that Plaintiff would need to call him "big dick daddy" before Plaintiff could sign up. (*Id.*, PageID.14.)

Plaintiff wrote a PREA complaint regarding Defendant Meehan's behavior. (*Id.*) After his complaint, he received numerous shakedowns at which time his personal property was destroyed. (*Id.*)

Plaintiff brings claims for violation of his Eighth Amendment rights (*id.*, PageID.1) and rights under the Prison Rape Elimination Act of 2003 (PREA) (*id.*, PageID.5). Plaintiff also claims that Defendants violated several MDOC policies and rules (*id.*, PageID.3, 4.) and alleges that he experienced retaliation following his complaints about Defendant Meehan (*id.*, PageID.14). As a result of the events described in Plaintiff's complaint, Plaintiff seeks monetary relief. (*Id.*, PageID.16.)

## II. Misjoinder

### A. Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Pace v. Timmermann's Ranch and Saddle Shop Inc.*, 795 F.3d 748, 754 n.10 (7th Cir. 2015), *and Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether

more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Plaintiff first describes the February 1, 2023, actions by Defendant Wakefield.[2] (ECF No. 1, PageID.6.) Plaintiff's claims against Defendant Wakefield are based upon Defendant Wakefield's search of Plaintiff during which Defendant Wakefield tore Plaintiff's stoma. (*Id.*) Plaintiff makes similar allegations against Defendants Cousins and Thomas (*id.*, PageID.8–9), and alleges that Defendants Washington and King failed to properly investigate these incidents after they occurred (*id.*, PageID.10). The Court will address Plaintiff's claims Defendants Cousins, Thomas, Washington, and King as transactionally related to Plaintiff's claims against Defendant Wakefield.

However, no matter how liberally the Court construes Plaintiff's allegations, Plaintiff has not stated at least "one claim against [Defendant Meehan] [that] is transactionally related to the claim against the first defendant, and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Plaintiff's claims against Defendant Meehan occurred at a separate facility and are entirely unconnected to Defendant Wakefield's February 1, 2023, search. Accordingly, the Court concludes that, while Defendants Cousins, Thomas, Washington, and King are properly joined, Plaintiff has improperly joined Defendant Meehan.

**B. Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendant Meehan to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on

---

[2] The analysis of joinder must start somewhere. Plaintiff's factual allegations against Defendant Wakefield are the first allegations described in Plaintiff's complaint and are alleged to have occurred first in time. By accepting Defendant Wakefield as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's claims Defendant Meehan arose no earlier than September 3, 2024. Plaintiff's complaint provides no indication that the statute of limitations

has or will run on Plaintiff's claims against Defendant Meehan, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against Defendant Meehan are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendant Meehan because he is misjoined, and the Court will dismiss Plaintiff's claims against him without prejudice to the institution of a new, separate lawsuit.[3] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs.").

**III. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] If Plaintiff wishes to proceed with his claims against the misjoined Defendant, he may do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration does mean that all claims arising out these events are properly joined.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Claims Against Defendants Washington and King**

Plaintiff appears to name Defendants Washington and King solely because of their supervisory positions as Warden of LRF and Director of the MDOC, respectively. Plaintiff fails to allege that they personally took any action against him. Instead, Plaintiff alleges that Defendant Washington is "responsible for all rules procedures and violations" (ECF No. 1, PageID.3), and that she "brushes everything under the rug" (*id.*, PageID.4). Plaintiff further alleges that Defendant King allowed "three C/O Sgt to go the same thing after the first incident . . ." (*Id.*, PageID.16.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Washington or King encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their personal knowledge of each

individual incident or their active conduct that could be said to have led to a violation of Plaintiff's constitutional rights. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Washington and King were personally involved in the search of Plaintiff or any resulting injury that Plaintiff attributes to the actions of Defendants Wakefield, Cousins, and Thomas. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Washington and King are premised on nothing more than respondeat superior liability, they are properly dismissed for failure to state a claim on which relief may be granted.

**B. Eighth Amendment Claims**

Plaintiff alleges that Defendants Wakefield, Cousins, and Thomas violated Plaintiff's Eighth Amendment rights through their use of force during their pat downs of Plaintiff and what Plaintiff terms "technically . . . sexual assault" because Plaintiff's stoma serves as the hole for waste to exit Plaintiff's body, similar to an anus.

**1. Excessive Force**

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v.*

*Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

With respect to each LRF pat down described in Plaintiff's complaint, the Court will assume that Plaintiff has met the objective standard in describing a sufficiently serious use of force, causing Plaintiff's stoma to tear. However, the subjective inquiry is unique to each Defendant.

First, Plaintiff alleges that he told Defendants Wakefield and Thomas of his disability and the need to exercise care for Plaintiffs ostomy bag and stoma prior to each pat down. However, Plaintiff describes that Defendants Wakefield and Thomas each disregarded Plaintiff's instruction and proceeded to search Plaintiff's body in a way that caused injury to Plaintiff's stoma. Taking these allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's Eighth Amendment excessive force claims against Defendants Wakefield and Thomas will not be dismissed on screening.

However, unlike Plaintiff's interactions with Defendants Wakefield and Thomas, Plaintiff's complaint does not indicate that Plaintiff told Defendant Cousins of his disability prior to her pat down. He instead avers that, after putting her thumb in Plaintiff's stoma hole during her search, Defendant Cousins told Plaintiff that she was sorry and that she had forgotten about Plaintiff's disability. (ECF No. 1, PageID.8.) Plaintiff's complaint does not contain any facts that would allow the Court to infer that Defendant Cousins conducted her pat down in a manner "maliciously and sadistically [intended] to cause harm." *Hudson*, 503 U.S. at 7. Therefore, the Court will dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Cousins.

### 2. Sexual Assault

Plaintiff also alleges that Defendants, in placing a finger or thumb in Plaintiff's stoma, committed sexual assault, in violation of Plaintiff's Eighth Amendment rights. The Court rejects Plaintiff's argument.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, Michigan law defines "sexual penetration" as "sexual intercourse . . . or any other intrusion, however, slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." Mich. Comp. Laws § 750.520a(*o*). It should go without saying that Plaintiff's stoma, despite its purpose of excreting waste, is not an anus and the fact that a portion of Plaintiff's anus may have been removed does not transform another body part into an anus. Defendants' actions in placing a finger or thumb into Plaintiff's stoma, while unpleasant, are not sexual assault. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment sexual assault claims.

**C. First Amendment Claims**

Plaintiff alleges that, when he complained of Defendant Thomas' search, Defendant Thomas told Plaintiff to "shut up" or he would send Plaintiff to segregation. (ECF No. 1, PageID.9.) Plaintiff also claims that, the day after the G.I. specialist called "the prison" to complain "about the acts of wrong," Plaintiff was transferred to URF. (*Id.*, PageID.10.) The Court will liberally construe Plaintiff's allegations as raising claims of First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise

of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, taking Plaintiff's allegations as true, including Defendant Thomas' threat to send Plaintiff to segregation, the Court will allow Plaintiff to proceed with his First Amendment retaliation claim against Defendant Thomas.

However, Plaintiff cannot state a claim regarding his transfer to URF. As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544.

Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were involved in the decision to transfer Plaintiff. Thus, to the extent alleged, Plaintiff fails to state a First Amendment retaliation claim premised upon the complaint of the G.I. specialist on Plaintiff's behalf and Plaintiff's transfer to URF.

**D. Claims for Violation of MDOC Rules and Policies**

Plaintiff also references violations of MDOC rules and policies throughout his complaint. To the extent that Plaintiff seeks to bring independent claims for these alleged violations, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC rules and policies fails to state a claim under § 1983.

**E. Claims for Violation of the PREA**

Plaintiff states that he brings claims under the PREA. Setting aside for a moment the meritless nature of Plaintiff's claims against these Defendants, Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Plaintiff's claims pursuant to the PREA will, therefore, be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under Rule 21 of the Federal Rules of Civil Procedure, the Court will drop as misjoined Defendant Meehan and will dismiss all claims against him without prejudice

Having conducted the review required by the PLRA, the Court determines that Defendants Washington, King, and Cousins will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment sexual assault claims, First Amendment retaliation

claims premised upon the actions of non-parties, claims premised upon MDOC rules and policies, and PREA claims.

Plaintiff's Eighth Amendment claims against Defendants Wakefield and Thomas for excessive force, and First Amendment retaliation claim against Defendant Thomas for his threat to send Plaintiff to segregation remain in the case.

An order consistent with this opinion will be entered.

Dated: May 29, 2025

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge